We are ready to proceed. I will remind both counsel that, as you know, we have given you two minutes to present your argument without interruption. And after that, you should be prepared for questions from the court. And you may begin. Good afternoon, your honors. May it please the court and counsel, my name is Ryan Pasiga and I represent the appellant, Ryan Thompson. And the initial threshold issue in this case is whether the first two search warrants ought to have issued, that being for the green Nissan Maxima and the contemporaneous cell phone tracking warrants that were issued. It's our position that there was not probable cause based on the four corners of those applications and that review that was conducted by the state court judge. And the reason is that a few things. Number one, what's termed a concerned citizen was actually an informant. This informant had a criminal record, was on probation, and was required to register as a sex offender. But the applicant did not make that known to the court. Second, there wasn't any specific information in the four corners of those applications that indicated that any of the alleged criminal activity by Mr. Thompson was current. There was no indication that there was ongoing information that there were trips being made to Chicago to unload heroin or to reload for heroin. There was no timing given as to when the criminal conduct had occurred. There was no timing given as to when Mr. Thompson allegedly possessed any firearms. And there was no specific information regarding whether or not the information that was purportedly known to the concerned citizen or the informant was known by that concerned citizen, him or herself, or whether that was third party information that was then told to that concerned citizen that's referred to in the application. So I think the four corners of those applications lack for probable cause. The initial R&R by Magistrate Menendez did indicate that it was thin. I will concede, of course, that upon review of the application that there has to be a substantial basis for probable cause. So it is a little bit of a watered down application that the court will look at upon review. But nonetheless, I don't think there's probable cause there for these search warrants to issue. And without that, the rest of the case sort of falls behind that. So we start with those first two applications. Before we get to the second two applications, we've got an issue because there was a traffic stop. And while law enforcement was tracking Mr. Thompson, both by GPS on the trap and trace warrant, as well as on the vehicle, they're told the day before a trip, I think it was March 4th of 2018, by this concerned citizen, that Mr. Thompson is going to be going to Chicago to pick up a load. They track him there. He's there for 20 minutes. They follow him back. And they arrest him or they arrest the vehicle. They don't put this in the second application, but they find nothing. Not even marijuana. No drugs, no firearms, nothing. And the applicant omits that information when they apply for the second set of search warrants, this time for a silver Nissan Maxima and again for more GPS and other phone information. Counsel, did you request a Frank's hearing on those claims? I was not trial counsel at the time, Your Honor, but his previous lawyer did not. They did not request a Frank's hearing. It kind of turned into a little bit of a Frank's hearing in my opinion, if you take a look at the transcript of the suppression hearing. But no, specifically a Frank's motion was not filed. And there is some discussion about that, Your Honor, in the R&R that there was not a Frank's hearing applied for. But I do think that's a material omission and whether or not that ought to go to a Frank's issue and whether that opportunity was missed or not, I think we can come back to that in terms of a Leon good faith issue or not. Because the other issue here is, Ivan, even if there isn't probable cause, does Leon save the officer and the search warrants in that particular situation? And on the one hand, I'll concede, of course, that the officer had other information to rely upon than what was contained in the four corners of that application and the officer wanted to protect the informant and did not want to divulge that information. On the other hand, the officer knew full well that there was a traffic stop that was supposed to be hot on his tail coming back with a load from drugs and that showed nothing. So the officer knew that there was nothing there and still the officer decided that they had good faith to rely on these warrants and I don't know that they had good faith at that point in time. I also don't think the officer had good faith in the very beginning of it because he didn't have any information that there was any contemporaneous or ongoing criminal activity. There was nothing that he had that suggested that it was current at the moment, at least within the four corners again. So I don't think there was, Your Honor, if it's Judge Strauss, I can't hear you. Didn't he have information on, sorry about that, didn't he have information though about that there were weekly trips being made to and from Chicago from the informant? Wasn't that contemporaneous enough to sort of show that there was some ongoing activity, drug activity going on? There was nothing I saw within the four corners of the application that said that the officer had information that there were information in the four corners that says there were weekly trips being made, but it doesn't say whether it was current or in the past. And so I'm not sure that that was there. We know that there was some tracking of Mr. Thompson going down to Chicago, for example, when they stopped him and there was marijuana that's referred to in that. By the way, that was three grams of marijuana that he was caught with. The application doesn't say there was only three grams of marijuana. So the applicant takes trouble to point that out to the court that there was an arrest and a vehicle seizure for marijuana going down to Chicago, yet he doesn't point out to the court that there was a subsequent hot on his tail watching every movement coming back from Chicago with a purported load from the day before and they find nothing. And so I don't think they should be able to have it both ways. And I think the court ought to have known about that at least by the second set of applications. Your Honor, I didn't say in the beginning of this, I wanted to reserve two minutes for rebuttal. I see I have three minutes and eight seconds left, but I'll continue asking questions. Let me ask you about the cell phone tracking because we haven't focused so much on that. There's a case, and I just want to give you a chance to respond, Illinois versus Kroll, a 1987 Supreme Court case. And it basically says where officers rely in good faith on a statute where that statutory procedure is later declared to be unconstitutional, which is kind of what happened in this case with the Carpenter situation, that the good faith exception still applies. And I want to give you a chance to respond and tell me whether you think that Kroll case applies. And if not, why not? Thank you, Your Honor. I don't think the officer had a good faith basis to rely on the statute. Number one, what he was really trying to do is make this an ongoing criminal investigation and use this information not for probable cause, but frankly to help him develop probable cause for later. And that was one of the weird things in this case is that there was an outdated form, as the R&R had referred to it, where the officer used a form that was supposed to be only authority for an attorney for the government to apply to that. But that wasn't done here. Here the officer wanted this GPS tracking information. He had it under the guise of a trap and trace, but really this was let's track him in real time. And that should have been supported by probable cause for a search warrant as opposed to any sort of statutory authority that he relied on. I'd like to reserve my time for rebuttal if that answers your question, Your Honor. It does. Thank you. Thank you. Counsel, we're now prepared to hear from you. Thank you, Your Honors, and may it please the court. My name is Lindsay Middlecamp, and I'm representing the United States in this appeal. My colleague, Alan Slaughter, represented the United States in the district court level in this matter. As Mr. Pasiga pointed out, this appeal essentially addresses probable cause at actually six stages of an investigation, but they really boil down to three dates. There's the February 28th date when the initial vehicle tracker and cell phone tracking and register orders were issued. Then on April 2nd, after Mr. Thompson had gotten a new vehicle and a new cell phone, law enforcement went back to the issuing court to ask for a new vehicle tracker warrant and a new cell phone tracking warrant. And then finally on May 6th, the arrest, the search of the vehicle, and the search of the apartment. Since Mr. Pasiga has focused on primarily the first and certainly the first two, and I believe we're all in agreement that if the first two are good, the events of May 6th come in and are not fruit of the poisonous tree, I will focus my argument today on the validity and the probable cause supporting the first two warrants, and particularly the carpenter issues on the cell phone trackers. Of course, the standard of review from this court today is de novo, but guided by strong deference to the courts that issued the warrants themselves. And that deference comes in the form of looking to see, did the court that issued the warrants have a substantial basis to find probable cause? And then what is the substantial for probable cause or substantial basis is whether or not there was a sufficient showing of facts that creates a fair probability that a crime will evidence of a crime will be found where it's being sought. And as the district court below noted, whether it's tracking a phone or tracking a vehicle, you're not looking for the drugs themselves in the phone. You're not necessarily looking for the drugs themselves in a vehicle when it comes to GPS tracking. Here, the investigation was into drug trafficking, which by its nature involves movement. And so tracking a vehicle to show that it is making these weekly trips to Chicago or that it is making short trips once returned from Chicago, consistent with drug distribution, is the evidence sought. Similarly with the phone, it is not that the phone is going to have in its GPS data evidence of the heroin or firearms alleged, but rather the movements of the phones and the communications sought that go towards establishing drug trafficking and distribution. I disagree with the defense's characterization. And I think the record is clear that, in fact, the affiant getting these initial warrants on February 28th and again on April 2nd did show contemporaneous or at least recent activity to establish probable cause for the issue in court. For one, as Judge Strauss correctly asked, he stated there are weekly trips. And if the court looks at the motions exhibits, for instance, exhibit one from the district court level, the affiant said in or around the beginning of February 2018, so earlier this month, now that he's attesting to this on February 28th, I spoke with this person. He says, and I quote, makes weekly trips to an address in Chicago, Illinois. So I think it is a stretch to say that the affidavit could have been stale and especially when the issuing court is allowed substantial deference and is allowed to draw inferences by the phrasing here. And so the defense cannot reach that burden of showing that the issuing judge should have drawn an inference that this was stale and didn't have a basis to issue a tracker. Counsel, I want to go back to the cell phone really quickly. I should have asked you this question when you were talking about it, but both the magistrate judge and the district court found the district court or that the state court judge had found probable cause. But if you look at the language that the state court judge used, it appears to track the statute and not probable cause. It uses the word probable cause, but then it parrots the language of section 2703D. So it says probable cause to believe that the information likely to be obtained is relevant to an ongoing criminal investigation. That does not sound like probable cause and you kind of touched on that a little bit in your earlier comments. Would it be better to rely on the good faith exception or it seems like we don't have to defer if the state court judge never found probable cause in the first place. Your Honor, you are correct that if this court were to find that the issuing judge didn't find or have probable cause, the good faith exception would save the warrant nonetheless. However, that is a saving exception. It presupposes that this court would be making a decision that this order on February 28th and then subsequently on April 2nd was lacking in probable cause to then raise the question of did the officer have good faith. Now the government would strongly suggest that good faith would apply if that's what this court concludes. However, as the court noted or as Judge Strasse just noted, the court essentially does both. That fathers in language from the earlier form, which the district court described as less than ideal. It also found repeatedly probable cause and it didn't just do that by using the word probable cause, but specifically in the context of the GPS tracker, it acknowledges that probable cause is required for that piece of the order, whereas that lower standard is the only amount required for the other forms of cell phone data sought. Again, that looks at the totality of the circumstances that were presented to the issuing judge. And because this is not a particularly high bar, and as the Supreme Court has noted, it is not readily or even usefully reduced to a neat set of rules, that should also hold true for how the issuing judge phrases its conclusion. If this court deferentially reads the state court's order to say, here's the information I've been presented by the appeant and based on that I find probable cause, if it then includes additional standard language that goes to a lesser conclusion, that doesn't give rise to this court finding that this neutral detached arbiter hadn't really done its job and hadn't evaluated the proper standard it was supposed to. So you would agree that this language taken in isolation really doesn't reflect probable cause? The second part of the phrasing I absolutely agree goes to that lesser standard that Carpenter found was not sufficient, but because the affidavit supporting the order did repeatedly explain what the basis of probable cause was, it reaches that heightened standard even if it could have been ordered differently. I note that in addition to the seemingly innocuous details that were part of the vehicle tracking and the cell phone tracking warrants, the appeant here, Officer Longren, was also able to produce and explain based on his own experience, his extensive experience in law enforcement in narcotics, that as to the cell phone specifically, the numbers that were provided by the concerned citizen were registered to a false name and an address that didn't exist and that based on Officer Longren's extensive experience, that is a fact that is consistent with someone who is trying to evade law enforcement or investigation. As for whether or not Mr. Pasiga has raised the concern that that second application for was fatally deficient because it did not include details of the arrest coming back from Wisconsin, he used the phrase having it both ways, but in fact, if the details of that arrest had been included, the district court notes this is one of those rare, unique cases where there was irrefutable evidence of the crime because it wouldn't have just said Mr. Thompson was stopped on the way back from Wisconsin. It would have also included that the informant provided law enforcement with a surreptitious recording in which Mr. Thompson essentially said, lucky me, the inspecting officer had a glove on and that's why he wasn't able to feel the drugs in the console. And so had all of that information been provided to the court, there's no question it would have been less, quote unquote, thin as the district court described these. But the probable cause standard does not require that law enforcement provide every single detail to the issuing judge. Instead, at this stage, we ask, were the details included enough to meet that probable cause standard? I have a question about you've referred to both the informant and the concerned citizen. And as I understand it, the officer testified that he thought this person was continued to be a concerned citizen until he actually, I think it was a he, but this person provided enough information for a warrant. Did he testify that that's normally what he does? Because it seems to me maybe he's a concerned citizen when he first comes in. But as soon as he starts asking for a break on his probation and becomes a paid informant, I think sometime in early March, is it consistent that they would call that person a concerned citizen? Because I think it's much further down the line from what I think of as a concerned citizen. Yes, Your Honor, he did testify on that issue. When he was examined on the question of why he originally refers to him as a concerned citizen and only later refers to him as a reliable informant, Officer Longren essentially testified that until arrest was made, essentially until the May 6th arrest, his personal use of that term of art did not reach that distinction. That he would generally in his practice call someone a concerned citizen. To the extent that person is getting something in return for the information that they're providing? Yes, Your Honor. I see that I'm out of time. It did not go deep into what his personal distinction was, but what was clear is that his phrasing in the warrant applications from February 28th and again on April 2nd were not intended to mislead and were consistent with Officer Longren's good faith use of that term of art. I have no further questions in light of the fact that my time has elapsed. The government asks that this court affirm the decision below and the denial of each of the suppression motions. Thank you. Thank you. Does Mr. Sega have some, yes, some rebuttal time? I do, Your Honor. Looks like I have about a minute and a half here and I'm ready to answer any questions. I guess one thing that seems to me that was hanging out there is this issue about, you know, whether the ongoing investigation for the GPS on them. And I think one of the things we need to know is that, of course, it was a pen register and a trap and trace. So law enforcement, when they get that, they're getting all the call logs coming in and all of the call logs going out as well as text messages and all those things. And despite any of that evidence, they don't have anything else to corroborate that there was ongoing drug trafficking activity once they even have that intelligence with the blessing from the district court. And so we have to look at that in terms of whether or not there's additional probable cause for the second set of search warrants. I think it keeps coming back to the four corners of this first search warrant application because all of the intelligence is built basically for there, at least in terms of the court looking at that. And we have to come back to that because I agree there are some problems in terms of arguing, well, wait a minute, if we get into a Frank's issue, law enforcement had more information here that they didn't want to put up for fear of blowing the cover on the informant there. But if we get back to the four corners of it, I just don't know that there's enough there to say, wait a minute, we've got probable cause that there is ongoing criminal activity right now. All we had is he's trafficked drugs before, he's known to carry guns, but not I saw him in his house with them, not I saw him load guns, not I saw him making a drug deal, not law enforcement after they're surveilling the property that there's foot traffic going in and out. Any of the other hallmarks of drug trafficking are not there in the four corners. And if that first set of search warrants for the vehicle and the electronic, the phone fail, I think everything behind that fails given the four corners analysis without a Frank's hearing. I'm out of time, but I'll answer any questions if you have any. I see none. Thank you both for your arguments today. We'll take the matter under advisement.